IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DON HUDSON, on behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. 4:16-CV-00089-SMR-HCA |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ATHENE ANNUITY AND LIFE COMPANY f/k/a AVIVA LIFE AND ANNUITY COMPANY; ATHENE USA CORPORATION f/k/a AVIVA USA CORPORATION; ATHENE HOLDING LTD.; ATHENE LIFE RE LTD.; ATHENE ASSET MANAGEMENT, L.P.; APOLLO GLOBAL MANAGEMENT, LLC, | ) ) ) ) ) ) ) ) | ORDER LIFTING STAY AND GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT |
| Defendants. | ) | |

This matter comes before the Court on Defendants' Motion to Dismiss. [ECF No. 160].

The Court previously stayed this motion pending a decision by the United States Court of Appeals

for the Eighth Circuit in a similar case. [ECF No. 187]. The Eighth Circuit issued its opinion in

*Ludwick v. Harbinger Group, Inc*., ___ F.3d ___, No. 16-1561, 2017 WL 1359477 (8th Cir. Apr.

13, 2017), and the Court accordingly lifts the stay. As explained below, the Court finds the Eighth

Circuit's ruling to be dispositive of this motion and GRANTS Defendants' Motion to Dismiss

Plaintiff's First Amended Class Action Complaint.

## I.  FACTS

The following facts are assumed to be true for purposes of the Motion to Dismiss. Plaintiff

Don Hudson is a resident of Oklahoma who purchased an annuity policy from Defendant Athene

Annuity and Life Company, formerly known as Aviva Life and Annuity Company ("ALAC"), in

November 2010. [ECF No. 154 ¶ 17]. ALAC is an insurance company with its domicile and

principal place of business in Iowa. *Id.* ¶ 19. Plaintiff filed this action on behalf of himself and

others similarly situated who purchased annuity products from ALAC during the relevant time period. *Id.* at 6.

Plaintiff alleges the Defendants entered into a fraudulent scheme to mislead consumers into purchasing annuities based on material misrepresentations regarding ALAC's financial strength. *Id.* ¶¶ 1, 3, 15. Under this scheme, ALAC entered into reinsurance or coinsurance transactions with its own wholly-owned "captive" or affiliated entities. *Id.* ¶ 7. Plaintiff acknowledges that insurance companies can reduce their liabilities by reinsuring risk with one or more third-party reinsurers. *Id.* ¶¶ 5, 115. However, ALAC is required to follow the Statutory Accounting Principles ("SAP") of the National Association of Insurance Commissioners ("NAIC") and, according to Plaintiff, under the SAP, ALAC could not use transactions with captives to reduce its liabilities. *Id.* ¶¶ 6–7, 9. Because these transactions represented a departure from NAIC SAP, ALAC was required to disclose these departures in its financial statements and state their impact on two metrics of an insurance company's financial health, its surplus and risk-based capital ("RBC"). *Id.* ¶¶ 8–10. Instead, ALAC fraudulently reported increasing surpluses and strengthening RBC ratios under NAIC SAP "giving the false impression of financial strength and stability to consumers like Plaintiff." *Id.* ¶ 15.

Specifically, from 2007 to 2014, Defendants coordinated to keep liabilities off of ALAC's books by transferring them to captives through a number of reinsurance and coinsurance transactions. During this time, ALAC sold annuities with premiums for individual annuities amounting to over $29 billion in total. *Id.* ¶¶ 93, 270. However, ALAC's increased sales of fixed annuities also created substantial long-term liabilities. *Id.* ¶ 106. Plaintiff alleges that in 2007 ALAC initiated its scheme through the creation of wholly-owned captive entities for subsequent reinsurance transactions. *Id.* ¶ 123. That year, ALAC entered into three reinsurance and

coinsurance agreements with two of its affiliates, purporting to cede millions in liabilities. *Id.* ¶¶ 124–28. ALAC should not have been able to take reserve credit for the transactions under NAIC SAP and did not disclose these transactions as departures from NAIC SAP, though the transactions could not function as "arm's length" transactions recognized under NAIC SAP. *Id.* ¶¶ 129–30. ALAC's surplus and RBC in 2007 under NAIC SAP were significantly below what was reported in ALAC's Annual Statement. *Id.* ¶ 132. ALAC continued to claim reserve credits for reinsurance and coinsurance transactions and report surpluses and RBC ratios that were lower under NAIC SAP in 2008, 2009, 2010, 2011, and 2012. *Id.* ¶¶ 133–40, 141–150, 151–163, 164–177, 178–187. In 2012, ALAC should have reported a negative surplus under NAIC SAP. *Id.* ¶ 187. ALAC's parent company agreed to sell ALAC, allegedly at a substantial loss, in December 2012 to Apollo Global Management, a private equity firm. *Id.* ¶¶ 189, 190–91, 193. On October 1, 2013, prior to the closing of the sale, ALAC, its parent, the buyer, and an affiliate executed additional reinsurance and coinsurance transactions to keep ALAC from having to report billions of dollars in liabilities. *Id.* ¶¶ 200–04. ALAC did not disclose these transactions in its 2013 financial statements. *Id.* ¶ 208. After ALAC's acquisition by Apollo, ALAC's stable, long-term assets were sold in favor of an illiquid and risky investment pool, which included securities backed by loans at a high risk of default. *Id.* ¶¶ 287, 297.

Plaintiff purchased a single premium index deferred contract for $200,000 from ALAC based on ALAC's representations of financial well-being. *Id.* ¶¶ 304, 306. He alleges his annuity "was worth significantly less than $200,000, given [ALAC]'s true financial condition," and he would not have purchased it had he known ALAC's true financial condition. *Id.* ¶¶ 307–08. Plaintiff alleges he sustained approximately $41,000 in damages at the time he purchased the annuity due to ALAC's failure to compensate him for the undisclosed increased risks caused by

ALAC's misconduct. *Id.* ¶ 308. Plaintiff surrendered his annuity in August 2014 after learning

the true condition of ALAC, sustaining further damages from having to pay $36,826.82 in

surrender charges in September 2014. *Id.* ¶ 309. Defendants used interstate mail and wires to

transmit misleading and false financial statements and marketing materials and process Plaintiff's

application and premium. *Id.* ¶¶ 313–14. Plaintiff alleges two counts under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, one count for

participation in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), and a second

count for conspiracy to violate § 1962(c) in violation of 18 U.S.C. § 1962(d). [ECF No. 154

at 81–82].

## II.  ANALYSIS

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief

can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this

standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "is not akin to a 'probability

requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully."

*Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The facts alleged in the

complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons v.*

*Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d

778, 783 (8th Cir. 2009)).  All reasonable inferences must be drawn in the plaintiff's favor.  *Crooks*

*v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

On April 13, 2017, the Eighth Circuit issued its decision in *Ludwick*, ___ F.3d at ___, 2017

WL 1359477, at *5.  In that case, the plaintiff similarly brought RICO claims alleging an insurance

company, F&G, had sold her an annuity while engaging in "sham transactions" to hide its true

financial condition.  *Id.* at *1.  The court affirmed the dismissal of the plaintiff's RICO claims

because litigating such claims "would interfere with state regulation of the insurance business, and

the claims are barred by the McCarran-Ferguson Act."[1]  *Id.* at *5.  The Eighth Circuit rejected the

plaintiff's argument that her claims were based on F&G's bookkeeping and did not represent

challenges to the propriety of the transactions or state regulatory decisions approving them:

> The precise claims asserted in this case arise out of F&G, in Ludwick's words, "misrepresent[ing] the true financial condition of [the company] in its public reports and marketing materials, artificially inflating its purported assets and surplus." Ruling on those claims would necessarily involve deciding whether the supposed sham transactions left F&G in the healthy financial position it reported, or whether Ludwick is correct that a proper accounting would have shown liabilities substantially exceeding F&G's assets . . . .
>
> Questions about insurance companies' solvency are, no surprise, squarely within the regulatory oversight by state insurance departments. . . . A federal court could not rule in Ludwick's favor without holding, more or less explicitly, that state insurance regulators were wrong to let the transactions proceed, because the negative surplus Ludwick alleges would be patently unreasonable and inadequate.

*Id.* at *2 (alterations in original).  The Eighth Circuit also addressed plaintiff's description of the

alleged misconduct as F&G's misrepresentation that the accounting in its financial statements did

not depart from NAIC SAP.  *Id.* at *3.  "To decide whether F&G's reported financials reflected a

---

[1] Under the McCarran-Ferguson Act, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012(b).

significant departure from the accounting principles it claimed to have followed, a federal court would need to ask what the result of the transactions should have been under those principles." *Id.* This would likewise require the court to engage in "second-guessing state regulators' oversight of F&G's solvency and stability." *Id.*

Plaintiff's case is controlled by the *Ludwick* decision. Both Iowa and Vermont regulate captive reinsurance companies and their transactions. *See* Iowa Code § 521A.5; 8 Vt. Stat. § 6001–24. ALAC is domiciled in Iowa, and the Iowa Insurance Division approved the transactions at issue.[2] *See* [ECF No. 154 ¶ 19]; Iowa Code § 521A.5; *Ludwick v. Harbinger Grp., Inc.*, 161 F. Supp. 3d 769, 774 (W.D. Mo. 2016), *aff'd*, ___ F.3d at ___, 2017 WL 1359477, at *5 ("The company's domicile serves as primary regulator in approving reinsurance transactions."). Like the plaintiff in *Ludwick*, Plaintiff argues his claims address Defendants' fraudulent misrepresentations regarding the financial health of ALAC and its compliance with the NAIC SAP and thus do not call into question state regulatory decisions. *See* [ECF No. 174 at 17–18]; *Ludwick*, 161 F. Supp. 3d at 774. As noted above, the Eighth Circuit rejected this argument. Furthermore, in his brief Plaintiff made no attempt to distinguish *Ludwick* and only argued that the district court had incorrectly dismissed that action. [ECF No. 174 at 27–28]. The Eighth Circuit disagreed. Plaintiff likewise did not object to this Court's stay of Defendants' motion pending the Eighth Circuit's decision in *Ludwick*.

---

[2] This case was originally filed in the Northern District of California. [ECF No. 1]. In granting the Motion to Transfer, [ECF No. 43], the district court noted that "[a]ll of the purportedly fraudulent transactions occurred" in Iowa and "the Iowa Insurance Division . . . approved every disputed captive reinsurance transaction under the law of Iowa." *Silva v. Aviva PLC*, No. 15-CV-02665-PSG, 2016 WL 1169441, at *4 (N.D. Cal. Mar. 25, 2016).

The Court does not see any distinguishing matters of law or fact preventing the similar dismissal of this action.  Hence, Plaintiff's claims are barred by the McCarran-Ferguson Act and must be dismissed.  The Court need not and does not consider Defendants' additional arguments for dismissal.

### III.  CONCLUSION

The Court holds that Plaintiff's First Amended Class Action Complaint fails to state a claim upon which relief could be granted.  Defendants' Motion to Dismiss, [ECF No. 160], is GRANTED.

IT IS SO ORDERED.

Dated this 11th day of May, 2017.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT